```
                   UNITED STATES DISTRICT COURT
                    DISTRICT OF NEW HAMPSHIRE
```

<u>Kimberly Kyle</u>

    v.                              Civil No. 07-cv-348-JL
                                      Opinion No. 2008 DNH 201
<u>Fidéle Tremblay, Inc.</u>
<u>and Francis Hammond</u>


### **O R D E R**

    This action arises out of an accident on Interstate 93 that injured the plaintiff and killed her six-year old son.  A tractor trailer driven by defendant Francis Hammond, while in the employ of defendant Fidéle Tremblay, Inc., jack-knifed into the plaintiff's vehicle in the wake of a snowstorm.  The defendants have filed a third-party complaint against the New Hampshire Department of Transportation ("DOT"), alleging that its lack of effort "to remove the snow or the resulting ice from the highway" caused or contributed to the accident.

    The Department of Transportation, equating itself with the State of New Hampshire, has moved to dismiss the third-party complaint, arguing (1) the court lacks subject-matter jurisdiction over the defendants' claims, (2) the DOT is immune from those claims in this court under the Eleventh Amendment, and (3) the third-party complaint fails to state a claim for relief. The court heard oral argument on the motion on November 19, 2008.

For the foregoing reasons, the court grants the motion to dismiss on the basis of Eleventh Amendment immunity.

I.  **Subject-Matter Jurisdiction**

This court has subject-matter jurisdiction over the plaintiff's claim against the defendants, Canadian citizens, under 28 U.S.C. § 1332(a)(2), which applies to actions between "citizens of a State and citizens or subjects of a foreign state" where the amount in controversy exceeds $75,000.  The DOT argues that this section does not confer jurisdiction over the defendants' claim against it since "[a] state cannot be a 'citizen' of itself for purposes of diversity jurisdiction." Univ. of R.I. v. A.W. Chesterton Co., 2 F.3d 1200, 1202 (1st Cir. 1993).  Because § 1332 gives the court jurisdiction over the plaintiff's claim against the defendants, however, it can hear the defendants' claim against the DOT under 28 U.S.C. § 1367(a), which confers "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."  See, e.g., State Nat'l Ins. Co. v. Yates, 391 F.3d 577, 579-80 (5th Cir. 2004).

## II. Eleventh Amendment Immunity

### A. Applicable Law

Though § 1367(a), unlike § 1332, can thus confer federal subject-matter jurisdiction over a claim against a state as a statutory matter, it does not waive the state's immunity from suit in federal court under the Eleventh Amendment. See Raygor v. Regents of Univ. of Minn., 534 U.S. 533, 541-42 (2002). The Eleventh Amendment generally immunizes states and their agencies from suit in federal court, Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1994), yet "[t]he mere imprimatur of state authority is insufficient to inoculate an agency or institution against federal court jurisdiction." Metcalf & Eddy, Inc. v. P.R. Aqueduct & Sewer Auth., 991 F.2d 935, 939 (1st Cir. 1993). The court of appeals has developed a two-part test for deciding whether a state agency is entitled to Eleventh Amendment immunity: first, the court must consider, by reference to a number of criteria, whether the state has structured the agency to share the state's immunity; second, if these considerations prove inconclusive, the inquiry shifts to whether any monetary damages recovered against the agency will be paid from the state's treasury.[1] Fresenius Med. Care Cardiovascular Res., Inc.

---

[1] This test thus "incorporates the twin interests served by the Eleventh Amendment: protecting the state's dignitary

3

v. P.R. & the Caribbean Cardiovascular Ctr. Corp., 322 F.3d 56, 68 (1st Cir. 2003). If the answer to either of these questions is "yes," the federal suit against the agency is barred by the Eleventh Amendment. Id.

**B. Analysis**

While the answer to the first question is the product of a number of factors, the overriding consideration is the degree of control which the state asserts over the entity. See id. Here, the State of New Hampshire, through its governor and legislature, exercises near-total control over the DOT, making the answer "yes." The DOT was expressly established as "an agency of the state," N.H. Rev. Stat. Ann. § ("RSA") 21-L:2, I, making it a "principal unit of the executive branch" under the Executive Branch Reorganization Act of 1983, id. §§ 21:G-5, III, -G:6, I. That legislation, in fact, was expressly intended to re-establish control of state agencies in the political branches of government. See id. §§ 21-G:2, -G:3. The DOT's commissioner, assistant commissioner, deputy commissioner, and the director of each of its divisions are all appointed by the governor, with the

---

interest in avoiding being haled into federal court, and protecting the public fisc." Pastrana-Torres v. Corporación De P.R. Para La Difusión Pública, 460 F.3d 124, 126 (1st Cir. 2006) (citations omitted).

consent of the Executive Council, id. §§ 21-L:3, -L:5, -L:5-a, and the commissioner is "responsible to" the governor and the General Court in the exercise of his duties, id. § 21-L:4, I.

Furthermore, the DOT's expenses are funded by the statewide biennial state budget and the six-year state capital expenditure fund, both of which are ultimately controlled by the General Court.[2] See id. §§ 9:3, 3-a. To this end, the commissioner must, like the commissioners of all other state departments, "[b]ienially compile a comprehensive program budget which reflects all fiscal matters related to the operation of the department and each program and activity of the department." Id. § 21-G:9, II(a); see also id. § 9:4, I. Moreover, even after funds are appropriated to the DOT by the General Court, their expenditure remains subject to the approval of the governor and the Executive Council. See id. § 4:15. The totality of this statutory scheme leaves no doubt that New Hampshire has structured the DOT to share the state's Eleventh Amendment immunity. See Breneman v. United States ex rel. FAA, 381 F.3d 33, 39 (1st Cir. 2004) (relying on nearly identical set of

---

[2] The DOT also receives monies from a state highway fund, but those, too, are allocated by the General Court. See RSA 9:9-b.

considerations to conclude that the Massachusetts Aeronautic Commission enjoyed Eleventh Amendment immunity).

The defendants' sole argument to the contrary relies on what they characterize as the DOT's ability to "sue and be sued" under RSA 230:81.[3]  That statute provides, in relevant part, that

> the department of transportation shall not be held liable for damages arising from insufficiencies or hazards on public highways . . . even if it has actual notice or knowledge of them, when such hazards are caused by snow, ice, or other inclement weather, and the department of transportation's failure or delay in removing such hazards is the result of its implementation, absent gross negligence or reckless disregard of the hazard, of a winter or inclement weather policy or set of priorities adopted in good faith by the officials responsible for such policy[.]

The ability of a state agency to "sue and be sued in its own name" factors into the Eleventh Amendment calculus because "the power to sue in the entity's own name, when coupled with other powers of self-determination typically held by distinct juridical entities (power to contract, power to buy, hold, and sell property), undeniably affords some additional independence from

---

[3]  At oral argument, the defendants suggested that, by (presumably) accepting federal highway funds, the DOT has consented to suit in federal court.  But "the mere receipt of federal funds cannot establish that a State has consented to suit in federal court," even when those funds are received under the same federal legislation that gives rise to the suit at issue (which is not the case here anyway, where the defendants have brought a common-law claim against the DOT).  Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 246-47 (1985).  The defendants' argument is untimely and incorrect.

the State, since the entity need not seek the State's consent to bring, defend, or settle a lawsuit." A.W. Chesterton, 2 F.3d at 1207 n.11. But RSA 230:81 does not confer any such powers on the DOT. It merely provides for a limited exception to the DOT's immunity from claims for "personal injury or property damages arising out of its construction, maintenance, or repair of public highways," RSA 230:80, insofar as those claims arose from weather-related hazards that the DOT did not remove due to gross negligence or recklessness.[4]

    The DOT's amenability to private suit in one narrow set of circumstances says next to nothing about its power "to sue and be sued" in general, and even less about its "independence from the State" as a "distinct juridical entity," which, again, is the only relevance of that power to the Eleventh Amendment inquiry in the first place. A.W. Chesterton, 2 F.3d at 1207 n. 11. The statutory scheme governing the DOT's existence conclusively demonstrates that it is a mere agency of the State of New Hampshire, with operations tightly controlled by the governor and

---

[4] The defendants do not argue that RSA 230:81, by waiving the DOT's immunity against this narrow class of claims, amounts to a waiver of its Eleventh Amendment immunity, but any such argument would be unavailing. "[I]n order for a state statute . . . to constitute a waiver of Eleventh Amendment immunity, it must specify the state's intention to subject itself to suit in federal court." Atascadero State Hosp., 473 U.S. at 241. RSA 230:81 does no such thing.

the General Court by the power of the purse and otherwise. The DOT is therefore entitled to share in the State's Eleventh Amendment immunity. Its motion to dismiss the third-party complaint (document no. 17) is GRANTED on that basis.[5]

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated: November 20, 2008

cc: Peter Scott Bratton, Esq.
    Scott D. Springer, Esq.
    Bruce E. Turgiss, Esq.
    Christopher J. Poulin, Esq.
    Mark W. Shaughnessy, Esq.
    Anthony M. Campo, Esq.
    Andrew Ranks, Esq.
    Lynmarie C. Cusack, Esq.
    Edith L. Pacillo, Esq.

---

[5] The court therefore does not reach the DOT's argument that the third-party complaint fails to state a claim for relief.